**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MITCH MITCHELL, | |
| Plaintiff, | CIVIL ACTION NO. 4:23-CV-02141 |
| v. | (MEHALCHICK, J.) |
| CONTINENTAL REAL ESTATE MANAGEMENT INC., | |
| Defendant. | |

**MEMORANDUM**

Presently before the Court is a motion to dismiss filed by Defendant Continental Real Estate Inc. ("Defendant") on March 1, 2024. (Doc. 6). Plaintiff Mitch Mitchell ("Plaintiff") initiated this lawsuit by filing a complaint against Defendant on December 26, 2023. (Doc. 1). Therein, he alleges hostile work environment and retaliation claims in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Pennsylvania Human Relations Act ("PHRA"). (Doc. 1). For the following reasons, Defendant's motion to dismiss will be **GRANTED**. (Doc. 6).

## I.   BACKGROUND AND PROCEDURAL HISTORY

The following background is taken from Plaintiff's complaint. (Doc. 1). On or about June 6, 2022, Plaintiff began working as a landscaper and maintenance worker for Defendant. (Doc. 1, ¶¶ 17, 18). In this position, Plaintiff was required to operate Defendant's vehicles. (Doc. 1, ¶ 19). On or about November 2, 2022, Plaintiff was working for Defendant at the same property as Defendant's employees Matt King ("Mr. King"), Jeremiah Farley ("Mr. Farley"), and Tyler Norris ("Mr. Norris"). (Doc. 1, ¶¶ 21-22). Plaintiff was preparing to drive one of Defendant's vehicles when he was approached by Mr. King, who had the keys to the

vehicle that Plaintiff needed in his hands. (Doc. 1, ¶¶ 24-25). In the presence of Mr. Farley, Mr. King put the keys down his pants, rubbed them against his genitals, and then attempted to hand them to Plaintiff, saying "here you go." (Doc. 1, ¶¶ 26-27). Plaintiff would not accept the keys. (Doc. 1, ¶ 28).

After the incident, Plaintiff immediately drove to Defendant's Human Resources Office, where he reported Mr. King's behavior to Representative Emily ("Emily"), who "did not take the report seriously at first," but eventually agreed to investigate Mr. King's conduct. (Doc. 1, ¶¶ 31-34). After several days had passed, it became apparent to Plaintiff that more of his co-workers had become aware of the incident. (Doc. 1, ¶ 35). On or about November 4, 2022, an almost identical incident occurred again when Mr. Norris took his keys and rubbed them on the outside of his pants directly around his genitals. (Doc. 1, ¶¶ 36-37). Mr. Norris then asked Plaintiff if he wanted the keys. (Doc. 1, ¶¶ 36-37).

Shortly after this second incident, a co-worker named Jeremiah told Plaintiff about a conversation he had with one Defendant's supervisors, Jake. (Doc. 1, ¶ 38). Jake told Jeremiah that Plaintiff should lay low "because there was a possibility of retaliation against Plaintiff." (Doc. 1, ¶ 38). Plaintiff immediately reported this conversation to Emily, who offered Plaintiff one week of paid time off to "step away from the situation." (Doc. 1, ¶ 40). However, unbeknownst to Plaintiff, Defendant shortened his paid time off to just two days. (Doc. 1, ¶ 41). Accordingly, upon his return, Plaintiff was accused of a no-call, no-show. (Doc. 1, ¶ 42).

On or about November 9, 2022, Plaintiff received a call from two supervisors, Scott Hanna ("Mr. Hanna") and Geoff Last Name Unknown ("Geoff"), who wanted to discuss Plaintiff's employment and his treatment while working for Defendant. (Doc. 1, ¶¶ 43-44). A

meeting was scheduled for November 11, 2022. (Doc. 1, ¶¶ 45, 46). The meeting was attended by Plaintiff, Mr. Hannah, Geoff, Emily, and Mr. King. (Doc. 1, ¶ 46). During the meeting, Mr. King gave Plaintiff a forced apology. (Doc. 1, ¶ 48). Supervisor Geoff then sarcastically told Plaintiff that Plaintiff's "feelings matter." (Doc. 1, ¶ 49). Plaintiff subsequently informed the supervisors that he would return to work. (Doc. 1, ¶ 51).

Upon returning to work, Plaintiff experienced more unpleasantness. For example, at one point a co-worker hid Plaintiff's tools, rendering him unable to finish one of his jobs. (Doc. 1, ¶ 52). Around this time, Defendant also implemented a new employee handbook which contained an updated sexual harassment policy. (Doc. 1, ¶¶ 53-55). The new policy allowed for the victim of sexual harassment to choose what happens to their offender. (Doc. 1, ¶¶ 53-55). Plaintiff sent a Snapchat message containing a picture of the handbook shortly after he learned of the new policy, joking that "Defendant had given him a fire starter." (Doc. 1, ¶¶ 57-58).

On or about December 6, 2022, Mr. Hanna informed Plaintiff that he was terminated for breaking Defendant's private policy by sending the Snapchat message. (Doc. 1, ¶¶ 62-63). At this time, Plaintiff asked why Mr. King was not being terminated. (Doc. 1, ¶ 64). Mr. Hanna told Plaintiff that Defendant's investigation did not uncover enough cause for the termination of Mr. King. (Doc. 1, ¶ 65).

On March 29, 2023, Plaintiff filed a Charge of Discrimination ("the Charge") with the United States Equal Employment Opportunity Commission ("EEOC"). (Doc. 1, ¶ 7). The Charge was dually filed with the Pennsylvania Human Relations Commission ("PHRC"). (Doc. 1, ¶ 7). On September 27, 2023, Plaintiff received a Notice of Right to Sue from the EEOC. (Doc. 1, ¶ 8).  Plaintiff subsequently filed the instant lawsuit on December 26, 2023

by filing a complaint alleging the following Counts: Count I Violation of Title VII of the Civil Rights Act of 1964 for Hostile Work Environment – Sexual Harassment; Count II Violation of Title VII of the Civil Rights Act of 1964 for Retaliation; Count III Violation of Pennsylvania Human Relations Act for Hostile Work Environment – Sexual Harassment; and Count IV Violation of Pennsylvania Human Relations Act for Retaliation. (Doc. 1, at 9-16).

On March 1, 2024, Defendant filed the instant motion to dismiss. (Doc. 6). Defendant filed their brief in support of their motion on March 15, 2024. (Doc. 7). On March 29, 2024, Plaintiff filed a brief in opposition. (Doc. 8). On April 5, 2024, Defendant filed a reply brief. (Doc. 9). Accordingly, the motion has been fully briefed and is ripe for disposition.

## II.   LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions that are not entitled to the assumption of truth, and finally determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). In deciding a Rule 12(b)(6) motion, the court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

After recognizing the required elements that make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not

entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions'. . . " *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). Nor need a court assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The court must accept as true all allegations in the complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347.

Additionally, Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed R. Civ. P. 8(a)(2). Thus, a well-pleaded complaint must recite factual allegations that are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action. There is no requirement that the pleading be specific or probable. *Schuchardt*, 839 F.3d at 347 (citing *Phillips v. Cty. of Allegheny*, 515 F.3d 224, at 233-234 (3d Cir. 2008)). Rule 8(a) requires a "showing that 'the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (quoting Fed. R. Civ. P. 8(a)(2)); *see also Phillips*, 515 F.3d at 233 (citing *Twombly*, 550 U.S. at 545).

## III. DISCUSSION

Defendant argues that Plaintiff's complaint should be dismissed because it is devoid of sufficient factual allegations to support Plaintiff's sexual harassment and retaliation claims brought under Title VII and the PHRA. (Doc. 7, at 3). According to Defendant, Plaintiff's pleading does not comply with the federal pleading standard. (Doc. 7, at 3). Plaintiff refutes this conclusion, arguing that he has adequately pled his claims under both Title VII and the PHRA and that Defendant's argument that the complaint should be dismissed for failure to meet the applicable pleading standard should be rejected. (Doc. 8, at 2). Plaintiff also asserts that if the Court is to grant Defendant's motion to dismiss, Plaintiff should be granted leave to amend his complaint. (Doc. 8, at 2). For the following reasons, Defendant's motion to dismiss will be **DENIED in part** and **GRANTED in part**. (Doc. 6).

A. HOSTILE WORK ENVIRONMENT/SEXUAL HARASSMENT UNDER TITLE VII AND
THE PHRA

Courts interpret hostile work environment claims asserted under the PHRA and Title VII using the same analysis. *See Jennings-Fowler v. City of Scranton*, 680 F. App'x 112, 117 (3d Cir. 2017); *see also Verma v. Univ. of Pennsylvania*, No. 11-611, 2012 WL 1835727, at *7 (E.D. Pa. May 18, 2012); *see also Brennan v. Century Sec. Servs.*, No. 3:21-CV-01678, 2023 WL 2504760, at *8 (M.D. Pa. Mar. 14, 2023); *see also Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996). To sufficiently state a claim for a hostile work environment claim based on sex discrimination, a plaintiff must show "(1) [they] suffered intentional discrimination 'because of' [their] gender; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected [them]; (4) the discrimination would have detrimentally affected a reasonable person in the same position; and (5) the existence of *respondeat superior* liability." *Betz v. Temple Health Sys.*, 659 F. App'x 137, 142 (3d Cir. 2016) (quoting *Andrews v. Philadelphia*, 895 F.2d 1469, 1482 (3d Cir. 1990)); *see also Verdu v. Trustees of Princeton Univ.*, No. 20-1724, 2022 WL 4482457, at *5 (3d Cir. Sept. 27, 2022). While the first four elements establish the plaintiff suffered a hostile work environment, the fifth element determines employer liability. *Huston v. Procter & Gamble Paper Prods. Corp.*, 568 F.3d 100, 104 (3d Cir. 2009). For cases in which the alleged harasser(s) are the same sex as the employee alleging sexual harassment, the Third Circuit has established three specific situations in which the harassment may constitute discrimination "because of sex" in *Bibby v. Philadelphia Coca Cola Bottling Co.* 260 F.3d 257, 262-63 (3d Cir. 2001). These situations are as follows:

> (1) "where there is evidence that the harasser sexually desires the victim[;]" (2) "where there is no sexual attraction but where the harasser displays hostility to the presence of a particular sex in the workplace[;]" and (3) where "the harasser's conduct was motivated by a belief that the victim did not conform to the stereotypes of his or her gender."

*Bibby*, 260 F.3d at 262-63.

Applying this precedent, Defendant avers that Plaintiff has failed to meet the requirements for same-sex sexual harassment. (Doc. 7, at 5; Doc. 9, at 2-3); 260 F.3d at 262-63. Plaintiff responds that "*Bibby* provides a possible, but not mandatory, framework for establishing same-sex sexual harassment, the premise for Defendant's argument that Plaintiff must allege facts that satisfy the *Bibby* criteria is wrong." (Doc. 8, at 13). Plaintiff's response has merit. As has been recognized by other courts in this Circuit, "*Bibby* does not provide a mandatory categorical test for same-sex harassment; it provides an evidentiary method for proving such harassment." *West v. Dan Lepore & Sons Co.*, No. CV 17-1592, 2019 WL 1227716, at *3 (E.D. Pa. Mar. 14, 2019). Thus, in reviewing Plaintiff's sexual harassment claims, the Court will look to whether Plaintiff has sufficiently pled the elements of a hostile work environment, leaving the evidentiary questions presented by *Bibby* to be resolved upon a developed record.[1] *Rachuna v. Best Fitness Corp.*, No. 1:13-CV-365, 2014 WL 1784446, at *6 (W.D. Pa. May 5, 2014) (opining the language of *Bibby* contemplates a fully developed record); *but see Betz v. Temple Health Sys.*, 659 F. App'x 137, 144-45 (3d Cir. 2016) (concluding the language of *Bibby* does not preclude dismissal for same sex discrimination at the motion to dismiss stage where appropriate).

---

[1] The Court also acknowledges Defendant's argument that Plaintiff must demonstrate his alleged harassment was motivated by sex, and that he has failed to do so. (Doc. 9, at 3). The Court agrees that the complaint is devoid of any factual allegations linking the alleged harassment Plaintiff suffered with his male gender. However, as dismissal of Plaintiff's hostile work environment claim is warranted due to deficiencies with pleading severe and pervasive conduct, the Court will not further opine on this conclusion.

The parties next dispute whether Plaintiff has alleged sexual harassment that was "severe and/or pervasive" such that the second prong of Plaintiff's hostile work environment is satisfied. (Doc. 7, at 9-11; Doc. 8, at 14-15; Doc. 9, at 5). "The question of whether an environment is sufficiently hostile or abusive must be judged by looking at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Moody v. Atl. City Bd. of Educ.*, 870 F.3d 206, 215 (3d Cir. 2017); *see also Kokinchak v. Postmaster Gen. of the United States*, 677 F. App'x 764, 767 (3d Cir. 2017). Accepting the allegations detailed in the complaint to be true, the Court cannot reasonably infer that the conduct alleged by Plaintiff is severe or pervasive enough to meet this burden. Plaintiff alleges two isolated incidents during which Defendant's employees rubbed their keys against their genital area and then unsuccessfully attempted to hand them to Plaintiff. (Doc. 1, ¶¶ 26-29, 36-37). "Unless extremely serious, offhand comments *and isolated incidents* are insufficient to sustain a hostile work environment claim." *Chinery v. Am. Airlines*, 778 F. App'x 142, 145 (3d Cir. 2019); *see also Castleberry v. STI Grp.*, 863 F.3d 259, 264 (3d Cir. 2017) (a single complained-of incident must be so extreme as "to amount to a change in plaintiff's employment terms and conditions"). Whereas the incidents complained are arguably gross, they are neither numerous nor humiliating enough to rise to the level of severe or pervasive as required to sustain Plaintiff's claim. *Cf. Nitkin v. Main Line Health*, No. CV 20-4825-KSM, 2021 WL 4860742, at *12 (E.D. Pa. Oct. 18, 2021), *aff'd*, 67 F.4th 565 (3d Cir. 2023) (finding seven incidents of sexual harassment insufficiently severe or pervasive to sustain a hostile work environment claim based on sexual harassment at the motion for summary judgment stage); *see also Tavares v. Builders FirstSource Ne. Grp., Inc.*,

No. CV 21-02964, 2023 WL 4248770, at *6 (D.N.J. June 29, 2023) (finding three incidents of sexual harassment insufficiently severe or pervasive to sustain a hostile work environment claim). Accordingly, the Court finds Plaintiff's hostile work environment due to sexual harassment claims fail under both Title VII and the PHRA. (Doc. 1, ¶¶ 67-74, 79-86). Defendant's motion to dismiss is **GRANTED** on this basis. (Doc. 6). Plaintiff's hostile work environment claims based on sexual harassment asserted under both Title VII and the PHRA, Count I and Count III of the complaint, are accordingly **DISMISSED without prejudice**. (Doc. 1, ¶¶ 67-74, 79-86).

      B.  Retaliation Under Title VII and the PHRA

      Defendant argues that Plaintiff has failed to state a claim for retaliation under Title VII and the PHRA. (Doc. 7, at 12). Specifically, Defendant argues that Plaintiff has not alleged facts to support that he engaged in protected activity or that there was a causal connection between Plaintiff's protected activity and his termination. (Doc. 7, at 12-17). Plaintiff refutes this argument, asserting his claim survives because he has alleged that he was terminated in response to his good faith complaint of sexual harassment. (Doc. 8, at 19).

      Title VII's anti-retaliation provision "'protects those who participate in certain Title VII proceedings . . . and those who oppose discrimination made unlawful by Title VII . . .'" *Ellingsworth v. Hartford Fire Ins. Co.*, 247 F. Supp. 3d 546, 555 (E.D. Pa. 2017) (citing *Moore v. City of Philadelphia*, 461 F.3d 331, 341 (3d Cir. 2006) *as amended* (Sept. 13, 2006)). To plead a claim for retaliation under both Title VII and the PHRA, a plaintiff must show that: "(1) [the plaintiff] engaged in conduct protected by Title VII; (2) the employer took adverse action against [plaintiff]; and (3) a causal link exists between [plaintiff's] protected conduct and the

employer's adverse action." *Connelly*, 809 F.3d at 788.[2] While Defendant does not dispute that Plaintiff's termination constitutes an adverse action, it avers that Plaintiff has not alleged that he engaged in protected activity or that there was a causal connection between such activity and his termination from Defendant.[3] (Doc. 7, at 13, 17). However, a review of the complaint reveals Defendant is mistaken.

First, Plaintiff has sufficiently pled the first element of his retaliation claim, that he engaged in protected activity. *Connelly*, 809 F.3d at 788. An employee "engages in protected activity by complaining to his or her employer about conduct that is prohibited by Title VII." *Ellingsworth*, 247 F. Supp. 3d at 555 (citing *Connelly*, 809 F.3d at 792); *see also Wilson v. Columbia Gas of Pa.*, 676 F. Supp. 3d 424, 438 (W.D. Pa. 2023) ("'opposition to discrimination can take the form of informal protests of discriminatory employment practices, including making complaints to management.'" (citing *Moore*, 461 F.3d at 343)). In cases where the plaintiff complains of behavior that is not protected by Title VII, their complaint constitutes protected activity so long as a reasonable person could believe the conduct complained of was violative of Title VII. *See Onely v. Redner's Markets, Inc.*, 697 F. Supp. 3d 410, 425 (E.D. Pa.

---

[2] Courts refer to both Title VII and PHRA retaliation claims "in the singular because the same framework for analyzing retaliation claims applies to both." *Connelly*, 809 F.3d at 792 (citing *Krouse v. Am. Sterilizer Co.,* 126 F.3d 494, 500 (3d Cir.1997)).

[3] The parties do not dispute that Plaintiff experienced an adverse action. Courts have consistently held that termination of employment qualifies as an adverse action for the purposes of Title VII and the PHRA. *See Daniels v. Sch. Dist. of Philadelphia*, 776 F.3d 181, 196 (3d Cir. 2015) (recognizing termination to be an adverse action for the purposes of Title VII and the PHRA); *see also LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 (3d Cir. 2007) (recognizing termination of employment as an adverse action). Because Plaintiff alleges that he was terminated from his employment, he has sufficiently pled adverse action. (Doc. 1, ¶ 88); *see also Torres v. Jade Mgmt. Inc.*, No. CV 3:23-00930, 2024 WL 219255, at *4 (M.D. Pa. Jan. 19, 2024) ("[plaintiff's] termination certainly qualifies as an adverse act.").

2023) ("'Protected activities' include both participating in Title VII proceedings and opposing what an employee reasonably believes to be conduct that is unlawful under Title VII."). Here, Plaintiff alleges that he complained of behavior that he believed to constitute sexual harassment on multiple occasions. (Doc. 1, ¶¶ 32, 38, 45-46). Because the complaint makes clear that Plaintiff reasonably believed that Defendant's employees sexually harassed him, this allegation is sufficient for Plaintiff to meet his burden as to the first element of his retaliation claim. *See Ellingsworth*, 247 F. Supp. 3d at 555-56 (finding plaintiff had sufficiently alleged protected activity in complaining to her supervisor about plaintiff's harassment); *see also Curry v. Devereux Found*, 541 F. Supp. 3d 555 (E.D. Pa. 2021) (finding plaintiff had sufficiently pled their claim where they reasonably believed they were subjected to disparate treatment unlawful under Title VII).

As for the causal element of Plaintiff's retaliation claim, Defendant argues that Plaintiff has failed to establish any connection between his termination and his protected activity. (Doc. 7, at 16). When determining whether there is a causal connection between a plaintiff's protected activity and adverse action, courts consider "whether there is an 'unusually suggestive' temporal proximity between the protected activity and adverse action or 'intervening antagonism or retaliatory animus, inconsistencies in the employer's articulated reasons for [the adverse action], or any other evidence in the record sufficient to support the inference of retaliatory animus.'" *Sousa v. Amazon.com, Inc.,* No. 22-3043, 2023 WL 7486751, at *4 (3d Cir. Nov. 13, 2023) (quoting *LeBoon*, 503 F.3d at 232-33 (citations and internal quotation marks omitted)). This causation analysis "is highly fact-based, and depends on the particular context in which the events occurred." *Mercer v. Se. Pennsylvania Transit Auth.*, 26 F.

Supp. 3d 432, 447 (E.D. Pa. 2014), *aff'd sub nom. Mercer v. SEPTA*, 608 F. App'x 60 (3d Cir. 2015). It is typically reserved for after discovery.

Plaintiff was terminated less than a month after meeting with Defendant's supervisors and Emily with Human Resources to complain of Mr. King's behavior, and less than two months after initially informing Emily about Mr. King's behavior.[4] (Doc. 1, ¶¶ 46, 62). Given the chain of events alleged in this case, this temporal proximity supports that there was an unusually suggestive temporal proximity between Plaintiff's termination and his complaints. *See Mack v. Yost*, 427 F. App'x 70, 73 (3d Cir. 2011) (finding that plaintiff had shown causation by alleging an unusually suggestive temporal proximity between the plaintiff's protected activity and defendant's adverse action); *see also Connelly*, 809 F.3d at 792-93 (finding that, in complaining to management about unwanted advances from a coworker, plaintiff "alleged facts that could support a reasonable inference of a causal connection between her protected activity in May 2010 and the gradual deterioration of her relationship with her employer until she was laid off in October 2010."). Accordingly, for the purposes of a motion to dismiss, Plaintiff has sufficiently pled that there was a causal connection between his protected activity and Defendant's adverse employment action. As the Court here finds that Plaintiff has sufficiently pled enough facts to satisfy all three elements of his retaliation claim, Defendant's motion to dismiss Plaintiff's retaliation claims asserted under Title VII and the PHRA, Count II and Count IV of the complaint, is **DENIED.** (Doc. 1, ¶¶ 75-78, 87-90; Doc. 6).

---

[4] Plaintiff was also terminated less than a month after hearing Defendant's supervisor had warned that Plaintiff could be subject to retaliation if he were to fail to "lay low." (Doc. 1, ¶ 38).

IV.   LEAVE TO AMEND

The Third Circuit has instructed that district courts generally must permit a curative amendment if a complaint is vulnerable to dismissal for failure to state a claim, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). The Third Circuit has also acknowledged that a district court has "substantial leeway in deciding whether to grant leave to amend." *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000). Here, Plaintiff's hostile work environment claim is to be dismissed without prejudice. Thus, the Court will grant Plaintiff the opportunity to cure the deficiencies outlined with this claim and to file an amended complaint that is complete in all respects. Plaintiff is directed to file this amended complaint within thirty days of this Memorandum and accompanying Order, on or before **September 15, 2024**.

V.   CONCLUSION

Based on the foregoing, Defendant's motion to dismiss is **GRANTED in part and DENIED in part**. (Doc. 6). Defendant's motion is **DENIED** as to Count II and Count IV. (Doc. 1, ¶¶ 75-78, 87-90; Doc. 6). Count I and Count III are **DISMISSED without prejudice**. (Doc. 1, ¶¶ 67-74, 79-86; Doc. 6). Plaintiff is directed to file an amended complaint within 28 days of this filing, on or before **September 16, 2024**.

An appropriate Order follows.

Dated: August 19, 2024

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States District Judge**

14